UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
YEHOSHUA SCHWARTZ and
MICHELLE SCHWARTZ,

       Plaintiffs,                    **ORDER ADOPTING AND**
                                       **MODIFYING REPORT &**
  - against -                      **RECOMMENDATION**

CARAVAN TRUCKING, L.L.C. and         08-CV-5156 (KAM)(ALC)
WILLIE ELLIOT,

       Defendants.
----------------------------------------X

**MATSUMOTO**, UNITED STATES DISTRICT JUDGE:

       In this personal injury action arising from a motor vehicle accident which occurred on Rockaway Boulevard in Queens County, defendants Caravan Trucking, L.L.C. ("Caravan") and Willie Elliot ("Elliot") (together, "defendants") move to preclude the expert witness of plaintiffs Yehoshua Schwartz ("Schwartz") and Michelle Schwartz (together, "plaintiffs"). (See ECF No. 28, Defs. 10/13/2010 Ltr.; ECF No. 30, Pls. 10/27/2010 Ltr.) The Honorable Andrew L. Carter has issued a Report and Recommendation dated January 5, 2011 ("R&R") recommending that defendants' motion be granted in part and denied in part. (See R&R at 1.) Defendants have timely objected to the R&R and plaintiffs have responded. (See ECF No. 33, Defs. 1/20/2011 Ltr.; ECF No. 34, Pls. 1/20/2011 Ltr.) Having undertaken a *de novo* review of the record in light of defendants' written objections pursuant to 28 U.S.C. §

636(b)(1)(C), the court adopts and modifies the R&R for the reasons that follow.

**BACKGROUND**

Plaintiffs claim that the negligence, recklessness, and carelessness of defendants caused an accident on July 8, 2008 on Rockaway Boulevard in Queens involving Schwartz, who was operating a motorcycle, and Elliot, who was operating a truck belonging to defendant Caravan. (See generally ECF No. 1, Compl.) Plaintiffs seek to call Steven A. Coulon ("Coulon") as an accident reconstruction expert at trial. (See Pls. 10/27/2010 Ltr.)

Specifically, plaintiffs seek to elicit expert testimony from Coulon regarding Coulon's findings as follows: (1) that Elliot had a clear view of opposing traffic and "could have and should have seen the oncoming motorcycle" before the accident ("Finding Number One"); (2) that Schwartz's motorcycle is equipped with an automatic headlight switch and that the "headlight of the motorcycle driven by Mr. Schwartz would have been on and visible to" Elliot at the time of the accident ("Finding Number Two"); (3) that Elliot made an illegal left turn in violation of New York Vehicle and Traffic Law Section 1163 ("Finding Number Three"); (4) that Elliott made a left turn after the left turn arrow changed to a full green ball in

2

violation of New York Vehicle and Traffic Law Section 1141 ("Finding Number Four"); (5) that Mr. Schwartz had "insufficient time and distance in which to successfully avoid the impact with" the truck operated by Elliott turning in front of him ("Finding Number Five"); and (6) that the lack of collision damage to the truck operated by Elliott coupled with the damage to the motorcycle operated by Schwartz "is indicative of a relatively low crash speed" and further indicative that Schwartz was not travelling at a rate of excessive speed ("Finding Number Six"). (See id. at 17.) Defendants moved to preclude Coulon's testimony in its entirety, and plaintiffs opposed. (See Defs. 10/13/2010 Ltr.; Pls. 10/27/2010 Ltr.)

In the R&R, Judge Carter first found that Coulon possessed relevant skills and experience to be qualified as an expert on "the physical mechanics of a motor vehicle accident." (See R&R at 3.) Judge Carter then recommended granting defendants' motion to preclude Coulon's testimony with respect to Finding Numbers Three and Four because he found that such findings were conclusions of law and therefore inappropriate subjects of expert testimony. (Id. at 4.) Judge Carter further recommended denying defendants' motion to preclude Coulon's testimony in all other respects and specifically permitting plaintiffs to elicit testimony from Coulon regarding Finding Numbers One, Two, Five, and Six. (See R&R at 4-6.) Defendants

have timely objected to the R&R's recommendation with respect to Finding Numbers One, Two, Five, and Six and renew their motion to preclude Coulon's testimony in its entirety on the grounds that "the jury simply does not need an expert" to testify regarding Coulon's proposed findings because the parties and non-party witness will provide "full and detailed testimony . . . which any layperson can understand" regarding these same issues. (See Defs. 1/20/2011 Ltr.)

## DISCUSSION

I.  **LEGAL STANDARDS**

   **A. REVIEW OF A REPORT AND RECOMMENDATION**

To the extent that a party makes specific and timely objections to a magistrate's findings, the court must apply a *de novo* standard of review. United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); 28 U.S.C. § 636(b)(1)(C). Upon such *de novo* review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). However, where no objection to a Report and Recommendation has been filed, the district court "need only satisfy itself that that there is no clear error on the face of the record." Urena v. New York, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001)

(quoting Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).

**B. DAUBERT MOTIONS TO PRECLUDE EXPERT TESTIMONY**

Because "[e]xpert evidence can be both powerful and quite misleading," district courts must perform a "gatekeeping" function to ensure, prior to admission of expert testimony at trial, that the expert's testimony "rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrill Dow Pharms. Inc., 509 U.S. 579, 595, 597 (1993) (internal citation omitted). The district court's responsibility to ensure that expert testimony is "not only relevant, but reliable," id. at 589, is generally thought of as requiring four interrelated inquiries to determine: (1) whether the witness is qualified as an expert to testify as to a particular matter; (2) whether the testimony is reliable, (3) whether the testimony is relevant; and (4) whether the testimony will "assist the trier of fact." See Nimely v. City of N.Y., 414 F.3d 381, 397 (2d Cir. 2005). The proponent of the expert testimony has the burden of establishing the admissibility of the evidence under these guideposts in accordance with the "liberal standard for the admissibility of expert opinions" embodied in the Federal Rules of Evidence. See id. at 395; see also United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007).

## II. APPLICATION

At the outset, the court notes that there are no objections to the R&R's recommendations that Coulon may be qualified as an expert and that plaintiffs should be precluded from eliciting testimony from Coulon regarding Finding Numbers Three and Four because such findings constitute conclusions of law and therefore are beyond the appropriate scope of expert testimony. Having reviewed the record and found no clear error with respect to these recommendations, for the reasons set forth in the R&R the court adopts the R&R's recommendations that Coulon has sufficient training and experience to qualify as an accident reconstruction expert and that plaintiffs should be precluded from eliciting testimony from Coulon regarding Finding Numbers Three and Four. See Urena, 160 F. Supp. 2d at 609-10 (absent objections to an R&R, the district court "need only satisfy itself that that there is no clear error on the face of the record") (quotation omitted).

Second, in light of defendants' objections, the court has conducted a *de novo* review of the record with respect to the R&R's recommendations that plaintiffs be permitted to elicit testimony with respect to Finding Numbers One, Two, Five and Six. Each finding will be discussed in turn.

### a. Objection Regarding Finding Number One

Coulon's Finding Number One concerns the clarity of Elliot's view of opposing traffic at the time of the accident and whether Elliott "could have and should have seen the oncoming motorcycle" driven by Schwarz. (See Pls. 10/27/2010 Ltr. at 17.) Because this testimony cannot meet the requirement that it would "assist the trier of fact," it is not a proper basis for expert testimony and therefore, is inadmissible. See Nimely, 414 F.3d at 396, n.11.

In order to show that expert testimony will "assist the trier of fact," a party must demonstrate that the proffered testimony would be helpful to the jury by commenting beyond what could be ascertained from the testimony of laypeople. United States v. Mulder, 273 F.3d 91, 101 (2d Cir. 2001) (district courts should not admit expert testimony that is "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help"). In this regard, the Second Circuit has explained that testimony that "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it by definition does not aid the jury in making a decision, rather, it undertakes to tell the jury what result to reach and thus attempts to substitute the expert's judgment for the jury's." Nimely, 414 F.3d at 397 (internal

citations and quotations omitted). Similarly, where expert testimony is needlessly cumulative of lay witness testimony, the testimony would not assist the trier of fact and may be excluded. See Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004).

Here, Coulon's expert testimony regarding Elliott's view of the oncoming traffic on the day of the accident and whether Elliott "could have [or] should have" seen Schwartz approaching on Schwartz's motorcycle is needlessly cumulative of the lay testimony that will be provided at trial by the parties and the non-party witness. In addition, persons of "common understanding" are fully "capable of comprehending the primary facts" regarding Elliott's view of the roadway at the time of the accident and are further capable of "drawing correct conclusions" from those facts. See United States v. Castillo, 924 F.2d 1227, 1232 (2d Cir. 1991). There is therefore no need for expert testimony on these issues as such testimony will not "assist the trier of fact" and instead will impermissibly intrude on the jury's function. See Nimely, 414 F.3d at 397. Accordingly, defendants' motion to preclude Coulon's expert testimony is granted with respect to Finding Number One. See Wills, 379 F.3d at 46 ("It is well settled that expert testimony is unnecessary in cases where jurors are as capable of comprehending the primary facts and of drawing correct

8

conclusions from them as are witnesses possessed of special or peculiar training.") (internal quotations and citations omitted).

### b. Objection Regarding Finding Number Two

Finding Number Two concerns the operation of the headlights and taillights on Schwartz's motorcycle at the time of the accident. Specifically, plaintiffs seek to elicit testimony from Coulon as follows:

> The motorcycle operated by Mr. Schwartz is equipped with an automatic headlight switch which turns the headlight and taillight of the motorcycle on when the key is turned to the on position. Therefore, the headlight of the motorcycle driven by Mr. Schwartz would have been on and visible to the tractor trailer driver Mr. Elliot.

(Pls. 1027/2010 Ltr. at 17.) Thus, Finding Number Two appears to contain two related findings: first, a finding regarding the operability of the mechanical equipment on Schwartz's motorcycle at the time of the accident; and second, a finding regarding whether the operation of that mechanical equipment caused the headlights and taillight to operate at the time of the accident and if so, what Elliott could have and should have seen at the time of the accident.

Plaintiffs have met their burden of showing that the first finding – regarding the operability of the mechanical equipment on Schwartz's motorcycle – is relevant and reliable.

9

However, for reasons similar to those stated above in connection with Finding Number One, the second portion of Finding Number Two regarding whether the headlight of Schwartz's motorcycle "would have been on and visible" to Elliott at the time of the accident is needlessly cumulative of the expected lay witness testimony that will be offered at trial. Moreover, this second portion of Finding Number Two is within the realm of "primary facts" which persons of "common understanding" are "capable of comprehending" and "drawing correct conclusions" from. See Castillo, 924 F.2d at 1232. As such, Coulon's expert testimony regarding whether the light was actually operating and, if so, what Elliott could have or should have seen at the time of the accident, would not assist the trier of fact. See Nimely, 414 F.3d at 397.

Accordingly, plaintiffs may elicit testimony from Coulon regarding the first portion of Finding Number Two with respect to the motorcycle's mechanical equipment, but may not elicit testimony from Coulon regarding the second portion of Finding Number Two regarding whether the motorcycle's mechanical headlight and taillight equipment was operating at the time of the accident and if so, what Elliott could have or should have seen at that time. Defendants' motion to preclude Coulon's testimony with respect to Finding Number Two is therefore granted in part and denied in part.

### c. Objections Regarding Finding Numbers Five and Six

Finally, plaintiffs have met their burden of establishing by a preponderance of the evidence that Coulon's expert testimony with respect to Finding Numbers Five and Six is relevant and reliable. Therefore, and for the reasons set forth in the R&R, the court adopts the R&R's recommendation that plaintiffs be permitted to elicit testimony with respect to Coulon's Finding Numbers Five and Six. (See R&R at 4-6)

### CONCLUSION

For the foregoing reasons, the R&R is adopted in part and modified in part, and defendants' motion to preclude plaintiffs' expert witness is granted in part and denied in part as set forth above.

Specifically, Coulon is qualified as an expert witness and plaintiffs will be permitted to elicit testimony from Coulon regarding: (1) Finding Number Two in part (to the extent that Coulon may describe the automatic headlight and taillight mechanisms with which Schwartz's motorcycle was equipped); (2) Finding Number Five (regarding the time and distance required for Schwartz to stop and avoid impact with the truck operated by Elliot); and (3) Finding Number Six (regarding the possible inferences arising from the observed collision damages to the vehicles).

Plaintiffs will be precluded from eliciting testimony from Coulon regarding Finding Numbers One (regarding Elliott's view of the road at the time of the accident); Finding Number Two in part (specifically in connection with whether the motorcycle headlight, if in operating condition, was in fact turned on at the time of the accident or would have in fact been visible to Elliott at the time of the accident); Three (regarding the lawfulness of Elliott's left turn); and Four (also regarding the lawfulness of Elliot's left turn).

**SO ORDERED.**

Dated: Brooklyn, New York
February 17, 2011

/s/
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York